DAVID S. DUNCOMB AND ERASTUS F. MEAD, TRUSTEES, PLAINTIFFS, v. THE NEW YORK, HOUSATONIC & NORTHERN RAILROAD COMPANY AND OTHERS, DEFENDANTS.

*Trustee of corporation—what contracts made by him with the company will be sustained—when he may enforce, equally with other bond holders, bonds given by the company to him to secure a debt—he cannot do so when the money for which the debt was incurred did not go to increase the fund from which the bond holders are*

*to be paid—rights of one holding bonds on which the company has not received the face value.*

APPEAL from an order made at Special Term, overruling exceptions to, and confirming the report of a referee, appointed by an interlocutory judgment or decree of foreclosure to compute the amount due on account of the bonds and mortgage set forth in the complaint, and of the coupons on the said bonds, and also to take an account of all of the said bonds and coupons now outstanding, whether held by absolute purchasers or as security for the indebtedness of the defendant, The New York, Housatonic and Northern Railroad Company, and of the persons who are the holders thereof respectively, and to ascertain and report the nature and extent of the interest of the several persons in the bonds held by them respectively, and to report the proofs so taken, together with his opinion thereon.

This action was brought to foreclose a mortgage made by the New York and Housatonic Railroad Company, to trustees, to secure its issue of bonds. The referee's report showed the bonds held by absolute purchasers, and also those held as collateral security for the debts of the company.

The court, at General Term, said: "L. D. Rucker became the president of the company in July, 1872, and immediately thereafter commenced making advances of cash and securities, and on January 1, 1873, he had advanced about $81,000. As collateral security for the payment of this amount the company gave Mr. Rucker $810,000 of the bonds. In the year 1871, P. P. Shaw advanced to the company $25,000, and took an assignment of $250,000 of the bonds as security for payment. This loan, with the securities, was assigned to the New York Loan and Indemnity Company. Mr. Rucker became security for the payment of this debt, and a judgment was obtained against him and the company, in the settlement of which he paid $1,250, and took an assignment of the judgment and the $250,000 of bonds held as security. In September, 1873, the Bessemer Company entered into a contract with the railroad company for the construction of the road, and while engaged in the performance of the work Mr. Rucker paid the Bessemer Company $27,048 in cash. This pay-

ment is not found by the referee and yet the proof of it seems to be uncontradicted. The balance of the bonds proved by Rucker, and amounting to $57,000, were delivered to him as security for this payment. This is the best statement that can be gathered from the case. The testimony is confused and the statements are obscure, and mistakes may creep in.

"Very important questions arise on this statement of facts. During all the time in which these advances were made by Mr. Rucker he was the president of the railroad company, and thus sustained toward it a fiduciary relation. The principle that a trustee can never be a purchaser of the property held in trust, had its foundation in the indispensable necessity of guarding against the hazard of abuse and removing the trustee from temptation. It had a deep and firm foundation in the Roman civil law and the common law of England, and has been held and enforced with augmented severity by the courts of this country and particularly by those of our State. (*York Building Co.* v. *Mackensie*, 8 Brown Par. Cas., 42; *Gardner v. Ogden*, 22 N. Y., 327.)

"But the contract is not void *ab origine*. The beneficiary may affirm or avoid any such purchase of trust property. If he elect to avoid and prove the trust relation, and that the property purchased was of the trust, the law conclusively presumes the trustee incapable of making the contract and will hear of no defense. Till election to avoid, however, the contract stands and title passes under it. (*Bostwick* v. *Atkins*, 3 N. Y., 53; *Boerum* v. *Schenck*, 41 Id., 189.) If the beneficiary elect to avoid, all the price brought to the trust by the deal must be surrendered. (*Davoue* v. *Fanning*, 2 Johns. Ch., 252; *York Co.* v. *Mackensie*, *supra*.) To ask equity he must come with clean hands. At bar the beneficiary asks, and must have avoidance, but the contract brought hard cash to its exchequer, all of which the trustee may lawfully reclaim. May he have it from this fund and share with innocent holders of like bonds? We think he is entitled to share the fund in equity, because his money went into the property which has produced the fund. The report must be modified to allow Mr. Rucker to prove bonds equal in amount to his cash advances, and the amount actually paid in settlement of the judgment against him. These same prin-

ciples apply to George W. Mead, and he must be allowed to prove bonds equal in amount to his actual advances, and so far the report must be modified. The company owed N. R. Kirkland, its president, $3,500 for salary, and gave him two notes to secure it, and as collateral seven bonds. No stronger objection can be urged to the issue of bonds to Mr. Kirkland than to an issue to any officer or director. The same conclusive presumption when availed of avoids both contracts. Mr. Kirkland still, however, has the debt and notes, and may enforce them against the company. If the bonds are proved here payment is in fact made by other bond holders. We compel such payment when the sum for which the bonds were issued went into the mortgaged property. This cannot be said of Mr. Kirkland's salary, and this distinction is fatal to his claim.

"Respecting the bonds of M. M. N. Smith, the facts are these. The bonds were issued to Thomas Clark and Mead and Clark as collateral security for money actually advanced to the railroad company. Mead was one of the trustees. Mead and Clark assigned the bonds to Smith, as collateral to a loan by Smith to them. The amount of Smith's advances to Mead and Clark is immaterial. He could get only what they had, a right to the money paid to the company if it elected to avoid and retake the bonds issued to Mead and Clark. This right Mead and Clark had, and it was alienable property and passed to Smith by assignment. Smith must be allowed to prove the bonds he holds to the extent of Mead and Clark's advances to the company. . . .

"The appeal of Dwight Studwell attacks the bonds presented by Joshua C. Saunders, which were mostly disallowed. These twenty-seven bonds of $1,000 each were obtained by David S. Duncomb, a director of the company, partly as a bonus for stock subscription and partly by purchase at 51 cents on the dollar. Afterwards they were assigned to Saunders as collateral security for a loan to Duncomb of $1,000, and Saunders had them sold on default of payment and bought them in. Under the rule laid down Saunders is entitled to prove bonds equal in amount to the actual cash paid by Duncomb to the company. . . .

"Daniel H. Temple holds five $1,000 bonds as collateral security for an indebtedness to him of David S. Duncomb, a

trustee. Duncomb could not, having mere possession, hypothecated bonds for his own benefit. They were improperly allowed, and the report must be corrected in that behalf. The claim of Harrison Hall was not disputed. The production of the bonds by him was evidence of ownership, and they were properly allowed.

*John N. Whiting,* for Louis D. Rucker, claimant and bondholder, appellant.

*Luke A. Lockwood,* for the plaintiffs, trustees, respondents.

Opinion by DYKMAN, J.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Order modified in accordance with opinion of DYKMAN, J., and order to be settled by him.